# Post *versus* Buffalo, Pittsburgh and Western Railroad Company.

1. A railroad company constructed a siding near one of their stations to facilitate the shipment of freight. A lumberman, accustomed to load cars at this siding, placed a large amount of lumber near the track, partly on the railroad company's right of way, and partly on ground hired for the purpose, in order that the lumber might be ready for shipment as required and as cars were furnished, and also (as reasonably appeared from the evidence) for storing and seasoning the lumber. This lumber caught fire from sparks thrown out by a locomotive engine running on the road, in an extremely dry season when fires were of frequent occurrence. In an action by the owner of the lumber against the railroad company to recover damages for the loss thus occasioned, the above facts appeared from the plaintiff's testimony, and the court entered a nonsuit:

   *Held,* that, conceding the loss to have been occasioned by the negligence of the defendant, nevertheless, the plaintiff, having placed his lumber in a dangerous place with a full knowledge of the danger, was guilty of contributory negligence, and the nonsuit was therefore rightly entered.

February 3d, 1885. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. GORDON, J. absent.

ERROR to the Court of Common Pleas of *Crawford County:* Of January Term, 1885, No. 29.

This was an action on the case by Samuel Post and C. B. Post, partners, trading as S. Post & Son against the Buffalo, Pittsburgh and Western Railroad Company to recover damages for the destruction of about 160,000 feet of lumber by fire from the defendant's locomotive. At the trial it appeared that the defendant had built a siding near Glyndon, Crawford County, for convenience in loading cars with hay, bark, wood, lumber, &c., for shipment by the patrons of the road. In the spring of 1881 the plaintiff placed along this siding, partly on defendant's right of way and partly on adjoining land, about 160,000 feet of lumber, which in July 1881 was destroyed by fire which was discovered just after the defendant's train had passed. The facts as shown by the testimony are fully stated in the opinion of the court. At the conclusion of the testimony the court below entered a compulsory nonsuit and subsequently refused to take it off. Plaintiffs then took this writ, assigning for error *inter alia* this action of the court.

*W. Ed. Marsh* and *Manley Crosby* (with whom was *Joshua Douglass*), for the plaintiffs in error.—Negligence is a question for the jury. The standard of duty is shifting according to

the circumstances of the case: West Chester R. R. *v.* McElwee, 67 Pa. St., 315; McCully *v.* Clarke, 40 Pa. St., 406; Glassey *v.* Hestonville R. R., 57 Pa. St., 172; Penn. R. R. *v.* Barnett, 59 Pa. St., 259. It is only when the undisputed evidence discloses no neglect on the defendant's part that the case can be withdrawn from the jury: Reading R. R. *v.* Ritchie, 102 Pa. St., 425; Huyett *v.* Railroad Co., 23 Pa. St. 374; Turnpike Co. *v.* Phila. & Trenton R. R., 54 Pa. St., 350; Phila. & Reading R. R. *v.* Schultz, 93 Pa. St., 344. To justify a nonsuit on the ground of contributory negligence, it must appear so clearly that no contrary inference can be drawn from the evidence, and the doctrine is limited to cases where the plaintiff's act is the proximate cause of the injury: Phila. & Reading R. R. *v.* Hendrickson, 80 Pa. St., 190; Flynn *v.* San Francisco R. R., 40 Cal., 14; Phila. & Reading R. R. *v.* Schultz, *supra;* Stackus *v.* N. Y. C. & H. R. Co., 79 N. Y., 464; Webb *v.* Rome & Watertown R. R., 49 N. Y., 420; Kellogg *v.* Chicago & N. W. R. R., 26 Wis., 223; Clemens *v.* H. & St. J. R. R., 53 Mo., 366.

*W. R. Bole* and *Jas. D. Hancock*, for defendant in error.—

Mr. Justice PAXSON delivered the opinion of the Court, March 9th, 1885.

Conceding that plaintiff's lumber caught fire from defendant company's engine No. 20, and that said company was guilty of negligence in not providing said engine with a proper spark arrester, and in allowing inflammable rubbish to accumulate upon the track near which the lumber was piled, we are nevertheless of opinion the court below committed no error in entering a compulsory nonsuit.

The defendant company had constructed a siding or switch near Glyndon to facilitate the shipping of freight over its road. The plaintiffs were manufacturers of lumber and had constructed a platform at this place to enable them to ship it. In the winter and spring of 1881 they had placed a large amount of their lumber, partly on the right of way of defendant company and partly on land rented by them for that purpose. This lumber was piled and "stuck," some of it within a few feet of the track and all of it near it. The evidence shows beyond a reasonable doubt that it was placed there for storage, for drying,. and for shipment when and as the same was required and cars could be furnished. A fire occurred in July of that year, and about 160,000 feet of the lumber was destroyed. It was alleged, and the probability is, that the fire was caused by sparks from engine No. 20, which passed about fifteen minutes before the fire was discovered. It originated in the inflamma-

ble rubbish referred to and soon extended to the lumber piles. The plaintiffs knew of the rubbish when they piled their lumber, and they also knew that there was no station at this point, and no one in charge to watch for fires or put them out if they occurred. That it was a dangerous place to pile lumber in any quantity, especially if left there for weeks and months, was proved by the witnesses called by the plaintiffs themselves. We have the additional fact that it was an exceptionally dry season; that fires were of almost daily occurrence along the line of the road, caused by the engines of the defendant company. It is a fact well known to every one that at such times no spark arrester, however carefully it may be constructed, will prevent fires where light and inflammable materials are near the line of the road. There is a point beyond which human ingenuity cannot go in the manufacture of screens for arresting sparks. There must be sufficient vent for draught, and where there is draught there will necessarily be sparks of a greater or less size.

The plaintiffs knew they were piling their lumber at a place of danger. It might not have been so to any great extent had it been placed there in small quantities for shipment only. But the evidence shows that it was placed there for storage and drying as well as shipment. In other words, they made a lumber yard within a few feet of passing engines and with the knowledge that broken bark and bits of lumber were scattered along the track in the immediate vicinity of the piles, liable at any time to take fire. They also knew there was no one to look out for and prevent fires; that it was a time of great drought, and the danger of fire was imminent. Their piles extended partly over the defendant's right of way, and to this extent they were trespassers, as there is no evidence showing that defendants assented to, or even knew of it. I do not lay much stress upon this matter, and it is only referred to as showing the dangerous proximity of the lumber to the passing engines.

With a knowledge of these facts the evidence does not show that the plaintiffs made any effort to save their lumber. They did not attempt to remove the inflammable debris, nor did they notify the company of its existence and the peril in which it placed their property. It is true C. B. Post, one of the plaintiffs, testified upon his re-examination that they could not get cars to ship the lumber as rapidly as they desired; that in one instance they were delayed two or three weeks waiting for cars. But this was not shown to have been the fault of the defendant company. It is an inconvenience which every shipper has to undergo at certain seasons, and it arises from the inability of any railroad company to furnish transpor-

tation at all times upon demand. There was nothing to show that there was an unreasonable or wanton delay in furnishing the cars. Besides, the lumber was usually shipped in small quantities—a carload or two at a time. Thus, on May 20th, plaintiffs shipped two cars; on June 8th, two cars; July 2d, one car; July 7th, one car.

The plaintiffs having shown by their own testimony that they piled their lumber in a dangerous place, the court below could not do otherwise than nonsuit them, and there was no error in the refusal to take it off. No authority is needed for so obvious a proposition.

Judgment affirmed.